IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

EVAN J. EIZENGA,

  Plaintiff,

vs.

Case No.:

MediaLab.AI Inc. d/b/a
WorldStarHipHop, and
Verified User "Rain Drops Media"
@Raindropsmedia1

  Defendants.
_____

## COMPLAINT
_____

I.    INTRODUCTION

Evan J. Eizenga ("**Eizenga**") brings this action for defamation against MediaLab.AI Inc. d/b/a WorldStarHipHop ("**WorldStar**") and Rain Drops Media ("**Raindrops**") collectively ("**Defendants**"), stemming from a viral video that falsely accused him of domestic violence. In October 2025, Defendants published a video depicting a woman with a black eye (Monroe Capri Bryant) and falsely implying that Eizenga – the man present with her in the video – had punched her. This accusation is completely false and has severely damaged Eizenga's reputation and well-being. The woman in the video was injured by a different individual who was later arrested on domestic violence charges, but Defendants' publication led viewers to believe

Eizinga was the abuser. Eizenga now seeks redress for the significant harm caused by this defamation.

## II. PARTIES

1. Eizenga is an individual resident and citizen of Fort Lauderdale, Florida. He is a private figure, not a public official or public personality. Eizenga has no history of violence or abuse toward women and enjoys a good personal and professional reputation in his community.

2. WorldStar is a Delaware corporation that owns and operates the popular video-sharing website worldstarhiphop.com and associated social media accounts. WorldStar's principal place of business is in Santa Monica, California. WorldStar is registered in Florida to do business and regularly publishes viral video content to millions of viewers, including viewers in Florida.

3. Rain Drops is, upon information and belief, an individual operating the social media account "Rain Drops Media" (@Raindropsmedia1) on the platform X (formerly Twitter), Instagram, Facebook, TikTok, and Threads.[1] Rain Drops Media is a verified content aggregator account that publishes viral videos and news on social media. The true identity and residence of the person or persons behind Rain Drops Media are currently unknown to Plaintiff and will be ascertained during discovery.

---

[1] https://linktr.ee/Raindropsmedia1?utm_source=ig&utm_medium=social&utm_content=link_in_bio&fbclid=PAc3J0YwZhcHBfaWQMMjU2MjgxMDQwNTU4AAGndC9i82sUNZQLRTumXqw_VngwfDtMQc9hNGEQV15trCrE6PzHjfUw_4f1s04&brid=2Vp7sLv1LCT2xYDBJhC9hQ



### III. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The parties are completely diverse. Plaintiff is a citizen of Florida, and on information and belief, Defendants are citizens of states other than Florida. WorldStar is a citizen of Delaware, and the Rain Drops place of citizenship is unknown. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendants pursuant to the Florida Long-Arm Statute, Fla. Stat. § 48.193(1)(a)2., because they committed intentional tortious acts that were expressly aimed at and caused harm in Florida. The defamatory content was published on the internet targeting a Florida resident (Plaintiff), causing injury to his reputation in Florida. Defendants knew or should have known the brunt of the harm would be felt by Eizenga in Florida, and the exercise of jurisdiction in Florida comports with due process. Additionally, this Court has personal jurisdiction over WorldStar pursuant to the Florida Long-Arm Statute, Fla. Stat. § 48.193(2), because WorldStar conducts substantial business in Florida by disseminating content to Florida users and deriving advertising revenue from Florida viewers.

6. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred



in this district and the harm to Plaintiff's reputation was principally suffered here. Plaintiff resides in this District, and the defamatory statements were accessed and circulated here, causing injury in this locale.

## IV.     FACTUAL BACKGROUND

7.     On or about October 15, 2025, a short video clip of an online live-stream began circulating widely on social media. In the video, a young social media influencer Monroe Capri Bryant ("**Bryant**"), is seen with a visible black eye and facial bruising, sitting next to Eizenga. During the live-stream, Bryant and. Eizenga appear together on camera, and at one-point Eizenga can be seen kissing Bryant near the temple of her head. The context of the live-stream was that Bryant was addressing her audience about her injuries.

8.     Defendants seized upon this video and republished it with sensational captions falsely accusing Eizenga of being the person who caused Bryant's black eye. Specifically, on October 15, 2025, the Rain Drops account posted the video on X (Twitter) along with a caption declaring: *"Woman was punched and assaulted by her boyfriend, she claims he still loves her and insists they're 'good'…"* This statement unmistakably refers to Eizenga (the man appearing as the Bryant's boyfriend in the video) and asserts that he physically assaulted Bryant. Raindrops presented this as a shocking "just in" news story, implying that Eizenga had beaten his girlfriend but that she was downplaying the abuse.



9. The next day, on or about October 16, 2025, WorldStarHipHop.com – a site owned by WorldStar – featured the same video clip on its website and social media, under the headline *"CYCLE OF ABUSE: Woman With A Black Eye Goes Live With Boyfriend Who <u>Allegedly</u> Punched Her, Insisting 'He Loves Me' And 'We're Good' As He Kisses Her On Camera."*[2] This headline (and the accompanying video post) explicitly alleges that Bryant's "boyfriend" – i.e., Eizenga – *"allegedly punched her."* WorldStar thus affirmatively tagged the situation as a "cycle of abuse" story, portraying Eizenga as an abusive boyfriend who had caused the visible facial injuries to Bryant and was now manipulating her into forgiving him. The WorldStar post was viewed tens of thousands of times within days of publication, garnering significant public attention and outrage.

10. These publications by Defendants spread rapidly across the internet. WorldStar's post alone generated tens of thousands of views and numerous comments. Rain Drops Media's tweet likewise went viral on X, with many users retweeting it, commenting in disgust at the portrayed abuse, and identifying Eizenga as the abusive "boyfriend." Defendants broadcast to a worldwide audience the narrative that Eizenga is a man who physically beats his girlfriend. This narrative is utterly false, but it spread like wildfire due to Defendants' wide reach.

---

[2] https://worldstar.com/videos/wshhHD587CBG4FLL74G5/woman-with-a-black-eye-goes-live-with-boyfriend-who-allegedly-punched-her-insisting-he-loves-me-and-were-good-as-he-kisses-her-on-camera



11. The statements published by Defendants – accusing Eizenga of having *"punched and assaulted"* Bryant – are demonstrably false. In reality, Eizenga never struck or harmed Bryant. Eizenga was not the cause of her black eye or any of her injuries. The man who assaulted Bryant was a different individual, not Eizenga.

12. Through several posts in July of 2025 (before the at-issue publication went viral), Bryant made it known that Eizenga was not the person responsible for her black eye.³

13. In the full version of the original live-stream, Bryant expressly stated on camera that it was not Eizenga who injured her. However, that exculpatory portion of the video was edited out of the short clip that Defendants obtained and posted. The clip disseminated by Defendants was selectively cropped to omit Bryant's statement clearing Eizenga, thereby creating the false impression that Eizenga was the abuser.

---

³ https://www.tiktok.com/@monroecapri/video/7525959608406494477
https://www.tiktok.com/@monroecapri/video/7523670750771940663
https://www.tiktok.com/@burnurcaughtthat2/video/7524233582789905694
https://www.tiktok.com/@burnurcaughtthat2/video/7497361262419119406
https://www.tiktok.com/@thatonefunnybish/video/7496960538073697578
https://www.tiktok.com/@monroecapri/video/7522571545332469047
https://www.tiktok.com/@monroecapri/video/7522939687749553463



14. Upon information and belief, Defendants (or their content sources) deliberately removed the context in order to craft a more salacious, shocking narrative to attract clicks and views. The video was clearly edited by the media company that posted it in order to push an agenda for clicks. Defendants published the edited, misleading version despite the readily available truth that Eizenga had not committed any assault.

15. Another man was responsible for Bryant's injuries. On October 6, 2025, more than a week before Defendants' publications – a 19-year-old individual named Luke Aaron Benesch ("**Benesch**"), was arrested in Miami-Dade County, Florida on charges of domestic battery and domestic violence in connection with the incident involving Bryant.

16. Public records show that Benesch was charged with Domestic Battery and related offenses and taken into custody on that date. This is the same assault that left Bryant with the black eye. Benesch, who is not Eizenga and bears no resemblance to him, was the perpetrator.

17. Bryant herself publicly confirmed that Eizenga was not her abuser. Bryant made statements on social media clarifying that the person who caused her injuries was Benesch. Defendants' assertions that Eizenga "punched" or assaulted Bryant are therefore unequivocally false.



18. Defendants' publications were not privileged in any way. The false statements at issue were not part of any official proceeding, fair report, or opinion commentary. They were presented as factual news on social media and a gossip site. Defendants acted as publishers of these assertions to the general public.

19. Defendants were negligent in publishing these serious allegations against Eizenga without verifying the facts. Any reasonable publisher in Defendants' position would have investigated the situation before accusing the individual of a violent crime. Had they done so, Defendants would have discovered abundant evidence that contradicted the narrative they ran with – including Bryant's own statements exonerating Eizenga and the existence of Benesch (who had already been arrested for the assault). Defendants failed to perform even basic due diligence, such as reaching out to Bryant or Eizenga for comment, checking police records, or reviewing the full context of the live stream.

20. The video clip was deliberately edited to omit Bryant's statement clearing Eizenga. Defendants either knew this omission made the video misleading or recklessly ignored the truth. Whether they edited the clip themselves or relied on a source that did, publishing such a context-stripped video to suggest criminal conduct shows willful disregard for the truth and Mr. Eizenga's rights.

21. Defendants' false statements severely damaged Eizenga's reputation, falsely branding him a domestic abuser. As a result, he has faced public contempt,



ridicule, and suspicion from friends, colleagues, and countless viewers across multiple platforms.

22. Defendants' false accusation that Eizenga committed violent domestic assault is so egregious that it constitutes defamation per se under Florida law.

23. Since the publication of the defamatory video, Eizenga has experienced extensive mental anguish, emotional distress, and humiliation. Being falsely cast as an abuser has caused him extreme shame, depression, anxiety, and loss of sleep. He has had trouble eating and has been haunted by constant stress over the situation. Eizenga has also suffered a loss of enjoyment of life – activities and social interactions he once found pleasure in have been tainted by the worry that people view him as a violent person or wish to physically injure him.

24. Eizenga has incurred economic and professional harm. He has lost work opportunities and income as a result of the damage to his name. Clients and business partners who became aware of the accusations have distanced themselves.

25. The humiliation and indignity Eizenga has suffered are significant. He has been forced to repeatedly deny heinous conduct that he never committed, and to explain to friends and family that the widely viewed video was misleading. The ordeal has taken a serious toll on his mental health. Defendants' actions have upended Eizenga's life and caused lasting harm.



26.  Pursuant to Florida Statutes § 770.01, on November 12, 2025, Eizenga through counsel, served written notice on WorldStar, identifying the false and defamatory statements at issue and demanding a full retraction and correction. This notice was provided more than 5 days prior to the filing of this Complaint. WorldStar was notified via its legal department and registered agent, and the Rain Drops Media account was notified on December 19, 2025, via direct communication on the X platform.

27.  Despite receiving timely notice of the defamation and an opportunity to mitigate damages, Defendants failed to retract or correct the false statements. More than five days have elapsed since Defendants received notice, yet no apology, clarification, or retraction has been published by either Defendant. The defamatory video and captions remained accessible to the public for an extended time (and, upon information and belief, Rain Drops post may still be available on X). Defendants' refusal to retract further evidences their disregard for the truth and for Plaintiff's reputation. Under Fla. Stat. § 770.02, because Defendants did not timely issue a retraction, they are fully liable for all damages, including punitive damages, which result from their defamatory publication.

V.   **CAUSES OF ACTION**

**Count 1 – Defamation**
(Against MediaLab AI, Inc. d/b/a WorldStarHipHop)

10 of 17



28.  Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 27 above as if fully set forth herein.

29.  On October 16, 2025, WorldStar published and disseminated the subject video and caption on WorldStarHipHop.com and, upon information and belief, cross-posted or republished the same content across additional platforms under its control (the "**WorldStar Publication**").

30.  The WorldStar Publication stated and conveyed that Eizenga was the woman's "boyfriend" who "allegedly punched" her and caused her black eye, thereby accusing Eizenga of committing domestic violence and battery and of physically abusing women.

31.  The WorldStar Publication is of and concerning Eizenga. Eizenga is the man depicted in the video and was readily identifiable, and viewers understood the accusation to refer to him.

32.  The WorldStar Publication is false. Eizenga did not punch, assault, batter, or otherwise physically abuse Bryant, and he did not cause her injuries.

33.  WorldStar's statements accuse Eizenga of a serious crime and are defamatory per se under Florida law, and Plaintiff is entitled to presumed damages.

34.  WorldStar acted with at least negligence in publishing the accusation without reasonable investigation and verification, and WorldStar acted with actual malice as set forth in the preceding allegations.

**11** of **17**



35. As a direct and proximate result of the WorldStar Publication, Eizenga has suffered damages including injury to reputation, humiliation, mental anguish, emotional distress, and economic losses.

### Count 2 - Defamation Per Se
(Against Rain Drops Media)

36. Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 27 above as if fully set forth herein.

37. On October 15, 2025, Rain Drops Media published and disseminated the subject video and caption on X (formerly Twitter) at https://x.com/Raindropsmedia1/status/1978531246121644260 and, upon information and belief, cross-posted and/or republished substantially the same content across additional platforms under its control (the "**Rain Drops Publication**").

38. The Rain Drops Publication stated as fact that the *"woman was punched and assaulted by her boyfriend,"* referring to Eizenga as the man shown in the video, thereby accusing Eizenga of committing domestic violence, battery and of physically abusing women.

39. The Rain Drops Publication is of and concerning Eizenga. Eizenga is the man depicted in the video and was readily identifiable, and viewers understood the accusation to refer to him.



40. The Rain Drops Publication is false. Eizenga did not punch, assault, batter, or otherwise physically abuse Bryant, and he did not cause her injuries.

41. Rain Drops Media's statements accuse Eizenga of a serious crime. The statements are defamatory per se under Florida law, and Eizenga is entitled to presumed damages.

42. Rain Drops Media acted with at least negligence in publishing and republishing the accusation without reasonable investigation and verification, and Plaintiff further alleges Rain Drops Media acted with actual malice as set forth in the preceding allegations.

43. Upon information and belief, the Rain Drops Publication on X alone received approximately 3.9 million views, dramatically amplifying the reputational harm and other damages suffered by Eizenga.

44. As a direct and proximate result of the Rain Drops Publication, Plaintiff has suffered damages including injury to reputation, humiliation, mental anguish, emotional distress, and economic losses.

### Count 3 - Defamation by Implication
(Against MediaLab AI, Inc. d/b/a WorldStarHipHop)

45. Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 27 above as if fully set forth herein.



46. WorldStar published the WorldStar Publication described above, including the "cycle of abuse" framing and the edited video-and-caption presentation.

47. Even to the extent WorldStar contends its wording was qualified (including through use of the term "allegedly"), the WorldStar Publication conveyed a false and defamatory implication by its overall gist, juxtaposition, and omission of key context, including the implication that Eizenga was Bryant's romantic partner and the person who punched or assaulted her.

48. That implication is false. Eizenga did not harm Bryant and was acting as a supportive friend in the video rather than as her boyfriend.

49. WorldStar intended, endorsed, or recklessly disregarded the probability that reasonable viewers would draw the false inference that Eizenga battered Bryant based on the manner in which WorldStar framed and disseminated the content.

50. WorldStar acted with at least negligence and, as alleged, with actual malice in conveying the false and defamatory implication about Eizenga.

51. As a direct and proximate result, Eizenga has suffered damages including injury to reputation, humiliation, mental anguish, emotional distress, and economic losses.

**Count 4 - Defamation by Implication**
(Against Rain Drops Media)



52. Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 27 above as if fully set forth herein.

53. Rain Drops Media published the Raindrops Publication described above on X and cross-posted or republished it across additional platforms.

54. Through its caption and the video's presentation, Rain Drops Media conveyed a false and defamatory implication that Eizenga was Bryant's boyfriend and the person who punched or assaulted her, including by presenting the edited clip as an abuse narrative without the omitted clarifying context.

55. That implication is false. Eizenga did not harm Bryant and was acting as a supportive friend in the video rather than as her boyfriend.

56. Rain Drops Media intended, endorsed, or recklessly disregarded the probability that reasonable viewers would draw the false inference that Eizenga battered Bryant based on the manner in which Rain Drops Media framed and disseminated the content.

57. Rain Drops Media acted with at least negligence and, as alleged, with actual malice in conveying the false and defamatory implication about Eizenga

58. Upon information and belief, the Rain Drops Publication on X alone received approximately 3.9 million views, substantially increasing and compounding the harm to Eizenga.

**15** of **17**



59. As a direct and proximate result, Eizenga has suffered damages including injury to reputation, humiliation, mental anguish, emotional distress, and economic losses.

## VI. DEMAND FOR JURY TRIAL

60. Plaintiff demands a trial by jury on all issues so triable.

## VII. CONDITIONS PRECEDENT

61. All conditions have been satisfied, excused, or waived.

## VIII. PRAYER FOR RELIEF

IX. Wherefore, Eizenga respectfully requests that the Court enter judgment in his favor and against Defendants, and grant the following relief: (a) compensatory damages in an amount to be determined at trial, including general damages for harm to reputation and mental anguish, and special damages for economic losses, jointly and severally against all Defendants; (b) punitive damages against Defendants, in an amount sufficient to punish Defendants for their willful, malicious conduct and to deter such conduct in the future, as permitted by law; (c) pre-judgment and post-judgment interest as allowed by law; (d) an award of Plaintiff's costs; (e) injunctive relief ordering Defendants to remove or retract the defamatory content; and (f) any other relief the Court deems just and proper.



**Dated:**  December 29, 2025.

                Respectfully submitted,

                <u>/s/ Nicholas A. Chiappetta</u>
                Nicholas A. Chiappetta, Esq.
                Florida Bar No: 1006407
                **Chiappetta Trial Lawyers**
                *Attorneys for Plaintiff*
                2101 Vista Parkway, Suite 258
                West Palm Beach, Florida 33411
                Direct: (561) 768-4500
                Fax: (561) 768-4600
                Service@chiappettalegal.com
                nick@chiappettalegal.com

                ***Designated Lead Counsel***

