UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:25-cv-62684-LEIBOWITZ

EVAN J. EIZENGA,

     *Plaintiff,*

v.

MEDIALAB.AI INC., *et al.*,

     *Defendants.*

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant MediaLab.Ai Inc.'s Renewed Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) ("the Motion") [ECF No. 17]. The Motion is fully ripe. [*See* ECF Nos. 18, 23]. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

In this action Plaintiff Evan Eizenga[1] ("Plaintiff" or "Eizenga"), a resident of Fort Lauderdale, Florida, alleges that an anonymous social media account and online "persona" known as Rain Drops Media ("Rain Drops") published a defamatory video falsely suggesting that Eizenga was an abusive partner who battered Monroe Capri Bryant ("Bryant"), a young social media influencer. [ECF No. 13 ¶¶ 1, 7]. The video in question consists of a collage of other social media posts and clips from Bryant's live-stream featuring Plaintiff and Bryant together along with a caption that reads, "Woman was punched and assaulted by her boyfriend, she claims he still loves her and insists they're 'good' . . . ." [*Id.* ¶ 8]. In the video, one of Bryant's eyes is severely bruised, and Plaintiff can be seen attempting to

---

[1]     The spelling of Plaintiff's last name has varied throughout his submissions. The Court adopts the spelling that appears on the docket—Eizenga.

kiss Bryant on the temple.  [*Id.* ¶ 7].  The video has been viewed roughly four million times on the social media platform X.  [*Id.* ¶ 9, 46].

As alleged, Defendant MediaLab.Ai Inc., d/b/a WorldStarHipHop ("Defendant" or "WorldStar"), owns and operates a popular video-sharing website known as worldstarhiphop.com. [*Id.* ¶¶ 9, 28].  WorldStar allegedly "allows and pays users to upload videos" (like the one at issue here) to worldstarhiphop.com.  [*Id.* ¶ 28].  To submit a video, users must consent to WorldStar's terms of service, which provide in part that the user agrees to provide WorldStar with a "license . . . to use, edit, publish and otherwise exploit [the] User['s] Content and . . . name in connection with [the submitted] Content."  [*Id.*].  On October 16, 2025, WorldStar reposted Rain Drops' video to its social media accounts (including Facebook, Instagram, and worldstarhiphop.com) with a slightly modified caption that now read:  "CYCLE OF ABUSE:  Woman With A Black Eye Goes Live With Boyfriend Who Allegedly Punched Her, Insisting 'He Loves Me' And 'We're Good' As He Kisses Her On Camera." [*Id.* ¶ 9].  WorldStar also "tagged" the video with three identifiers:  (1) "domestic violence," (2) "Relationships," and (3) "TikTok."  [ECF No. 13-1 at 2].  Plaintiff does not allege that Defendant created or otherwise altered Rain Drops' video.  WorldStar has since removed the video from its platform.

Plaintiff asserts that Bryant's injuries were caused by another individual, who was arrested in Miami-Dade County, Florida, on charges of domestic battery and domestic violence in connection with the incident involving Bryant.  [ECF No. 13 ¶¶ 15–16].  Bryant herself has repeatedly stated that Plaintiff was not responsible for her injuries.  [*Id.* ¶¶ 12–13, 17].

## LEGAL STANDARD

Whether the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim turns on whether the plaintiff has alleged enough plausible facts to support the claim stated.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556); *see also Wilborn v. Jones*, 761 F. App'x 908, 910 (11th Cir. 2019) (per curiam). "The plausibility standard" is not the same as a "probability requirement" and "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

Defendant moves to dismiss Counts I and III of the Amended Complaint under Section 230 of the Communications Decency Act ("CDA"). [*See generally* ECF No. 17]. Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The Eleventh Circuit has interpreted the CDA "to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 330 (4th Cir. 1997)). "The purpose of this statutory immunity is to 'maintain the robust nature of Internet communication' and to avoid the 'obvious chilling effect' that would result from the specter of tort liability on service providers for millions of postings by third parties." *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *2 (11th Cir. June 12, 2023) (quoting *Zeran*, 129 F.3d at 330).

A defendant is entitled to protection under Section 230 when three requirements are satisfied: (1) the defendant is a provider of an interactive computer service, (2) the claim is based on information provided by another information content provider, and (3) the claim would treat the defendant as the

3

publisher or speaker of that information.  *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1363 (S.D. Fla. 2022).  Plaintiff does not dispute that its claims seek to treat Defendant as the publisher or speaker of the information at issue in this action.  Accordingly, the Court considers the first two elements and concludes that Defendant is entitled to protection under the CDA.

## I.   Defendant is a Provider of an "Interactive Computer Service"

The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  A court should examine the information at issue in an action to determine whether a defendant acted as a provider of an interactive computer service in a particular case.  *See Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1318 (M.D. Fla. 2015) (Covington, J.).  "Courts typically have held that website exchange systems and online message boards are interactive computer services."  *McCall*, 2023 WL 3946827, at *2 (citing *Lawyers' Comm. For Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) and *Universal Commc'ns Sys. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007)).  More generally, a website provides an interactive computer service when it merely hosts third-party content, even where the website exercises editorial discretion in determining whether to post and how to present that content.  *See, e.g., Roca Labs, Inc.*, 140 F. Supp. 3d at 1318; *Regions Bank v. Kaplan*, No. 8:12-CV-1837-T-17MAP, 2013 WL 1193831, at *18 (M.D. Fla. Mar. 22, 2013).  Thus, websites that allow third-party users to submit or upload content are providers of internet computer services within the meaning of Section 230.  *See Mezey v. Twitter, Inc.*, No. 1:18-CV-21069-KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) ("Twitter—as a platform that transmits, receives, displays, organizes, and hosts content—is an interactive computer service."); *McCall*, No. 22-11725, 2023 WL 3946827, at *2 (finding Amazon to be an interactive computer service provider because its "website allows customers to view,

purchase, and post reviews online, and therefore provides computer access by multiple users similar to an online message board or a website exchange system").

Here, Defendant acted as a provider of an interactive computer service with respect to the content at issue in this action.  As Plaintiff himself alleges, Defendant operates a "video-sharing website" that "publishes viral video content" and "allows and pays users to upload videos" to its platform.  [ECF No. 13 ¶¶ 2, 28].  Because Defendant receives content from third-party users and then "transmits, receives, displays, organizes, and hosts [that] content" on its platform, Defendant is akin to X, TikTok, and other video-hosting websites that courts have found to be internet computer service providers.  *See Mezey*, No. 1:18-CV-21069-KMM, 2018 WL 5306769, at *1.  Plaintiff does not directly allege that Defendant reviews, modifies, or otherwise engages with user-submitted content, and the mere fact that Defendant purports to reserve the right "to use, edit, publish and otherwise exploit [a] User['s] Content and … name in connection with [submitted] Content," [*id.* ¶ 28], is insufficient without more to allege that Defendant acted as something other than an interactive computer service provider in this particular case.[2]  Indeed, Plaintiff does not allege that Defendant independently generates any content whatsoever.  Rather, Plaintiff alleges that Defendant merely reposted the challenged content without editing the video itself.[3]  [*Id.* ¶ 9].  Accordingly, within the context of this action, Defendant provided an interactive computer service.

II.    **Plaintiff's Claims Are Based on Information Provided by Another Information Content Provider**

The CDA defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or

---

[2]    Plaintiff's allegation that "WordStar is not an interactive computer service," [ECF No. 13 ¶ 28], is a quintessential conclusory allegation that the Court may properly disregard on a motion to dismiss.  *Twombly*, 550 U.S. 544, 556–57.

[3]    As discussed in greater detail below, Plaintiff's suggestion that "Defendants (or their content sources) deliberately removed the [broader] context [of the video] in order to craft a more salacious, shocking narrative" is not properly alleged.  [ECF No. 13 ¶ 14].

any other interactive computer service." 47 U.S.C § 230(f)(3).  An entity may be both an internet computer service provider as well as an information content provider.  *See Roca Labs, Inc.*, 140 F. Supp. 3d at 1318 (citing *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc)).  In that case, "the 'critical issue is whether . . . the service provider or user acts as an information content provider with respect to the information' at issue" in the action. *Id.* (citing *Roommates.com, LLC,* 521 F.3d at 1162) (alteration adopted) (citation modified).  Courts have adopted a "material contribution" test to determine whether an entity "developed" the content at issue.  Under that test, a website operator may be held liable for third-party content where (1) it "substantively alters" the content and where (2) the substantive alteration is "directly involved in the alleged illegality." *Id.* at 1318; *Doe v. Fenix Int'l, Ltd.*, No. 22-CV-62176, 2025 WL 336741, at *4 (S.D. Fla. Jan. 30, 2025) (Altman, J.) (explaining that website operator may be "responsible for the development of the information at issue in the case if they *directly and materially contributed to what made the content itself unlawful*") (quoting *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 127 (4th Cir. 2022)) (emphasis added).

The bar for "substantive alteration" is high.  To start, the test requires something above and beyond the "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014) (quoting *Zeran v. Am. Online, Inc.,* 129 F.3d at 330).  Nor is it enough for a plaintiff to allege that a defendant promoted content through the use or creation of algorithms, tags, video thumbnails, summaries, posts, or animations. *See Fenix Int'l, Ltd.*, No. 22-CV-62176, 2025 WL 336741, at *6 (collecting cases); *see also L.H.*, 604 F. Supp. 3d at 1364 ("[A] website does not 'create' or 'develop' content simply by providing tools that make user-created content available and usable to others.").

Plaintiffs also face an uphill battle in making a showing of direct involvement in the alleged illegality of the content.  As the Ninth Circuit has explained:

6

> A website operator who edits user-created content—such as by correcting spelling, removing obscenity or trimming for length—retains his immunity for any illegality in the user-created content, provided that the edits are unrelated to the illegality.  However, a website operator who edits in a manner that contributes to the alleged illegality—such as by removing the word "not" from a user's message reading "[Name] did *not* steal the artwork" in order to transform an innocent message into a libelous one—is directly involved in the alleged illegality and thus not immune.

*Roommates.com, LLC*, 521 F.3d at 1169.  As Judge Robert N. Scola, Jr., put it, "a website will be found to have materially contributed to the unlawful nature of content where it pointedly solicited such content, *essentially compelling users to engage in illegal conduct as a condition to using the platform*."  *L.H.*, 604 F. Supp. 3d at 1364 (emphasis added).  By contrast, "where there has simply been 'enhancement by implication or development by inference' . . . , 'section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles.'"  *Id.* (quoting *Roommates.Com, LLC*, 521 F.3d at 1169).

Plaintiff fails on both counts.  Starting with the "substantive alteration" requirement, Plaintiff alleges that Defendant made just three changes to Rain Drops' original video:  (1) adding "CYCLE OF ABUSE" to the caption, (2) adding "allegedly" to the caption, and (3) tagging the video with a "domestic abuse" identifier.[4]  Those minor changes—none of which altered the video itself—fall far short of the allegations required to make out substantive alteration.  In *Fenix Int'l*, for example, the

---

[4]     Plaintiff also alleges, "upon information and belief," that "Defendants (or their content sources) deliberately removed the [broader] context [of the video] in order to craft a more salacious, shocking narrative to attract clicks and views."  [ECF No. 13 ¶ 14].  However, a court need not take as true allegations pled "upon information and belief."  *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013).  That rule must apply with particular force where an allegation is contradicted by other allegations in the complaint.  Here, Plaintiff straightforwardly alleges that misleadingly edited versions of the video were circulating online before Defendant published the video to its website.  [ECF No. 13 ¶¶ 7–9].  Moreover, Plaintiff alleges that Defendant reposted "the *same* video clip" that Defendant Rain Drops posted the day before.  [*Id.* ¶ 9].  WorldStar cannot have "deliberately removed the context in order to craft a more salacious, shocking narrative" where it merely reposted the "same video clip" that was already circulating online.  [*Id.* ¶ 14].  Finally, because these allegations simply lump together the actions of Rain Drops and WorldStar, the Amended Complaint constitutes an impermissible shotgun pleading that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions."  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

court granted protection under Section 230 where the plaintiff "(1) 'allege[d] that Fenix added credibility to Romelus'[s] profile and content by verifying and adding a check mark next to Romelus'[s] account'; and (2) 'allege[d] that Fenix advertised and promoted Romelus' profile and videos, including the video depicting Plaintiff's rape, through creating webpage posts and adding new captions, video and content summaries, new animations, and/or new video thumbnails.'"  No. 22-CV-62176, 2025 WL 336741, at *5.  Similarly, in *L.H.*, the court found the plaintiff's allegations deficient where she alleged that the defendant had "'allowed' or even 'encouraged' sex traffickers to market their victims by, among other things, requiring explicit images to be blurred or cropped and allowing the use of the aliases," and that the defendant had "'created' classified categories [that encouraged sex trafficking, including categories for] 'erotic services,' 'adult services,' 'casual encounters,' [and] 'massage services.'" 604 F. Supp. 3d at 1365.  The minor, paratextual modifications at issue here fall far short of the more substantial alterations courts found wanting in *Fenix Int'l* and *L.H.*

Nor has Plaintiff plausibly alleged that Defendant "materially contributed" to the illegality of the content.  As precedent in this district makes clear, a defendant must come close to *creating* the illegal content—not merely augmenting, enhancing, or promoting the content.  Here, Defendant created nothing.  It reposted a preexisting video and adopted a preexisting caption almost word-for-word.  The addition of the leading phrase "CYCLE OF ABUSE" and the "domestic violence" tag at most "augment" or "develop[] by inference" the alleged illegality already at issue in the original video. *Id.*  Moreover, the addition of the term "allegedly" cuts *against* Plaintiff because it emphasizes the speculative nature of the assertion.  Accordingly, Plaintiff has failed to allege that Defendant *substantively* altered the challenged content and, to the extent that Plaintiff altered the content at all, Plaintiff has not alleged that the alterations materially contributed to its alleged illegality.

In response, Plaintiff relies on *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136 (N.D. Ala. 2022) (Coogler, J.), a case in which the court found Section 230 inapplicable to claims that the

defendant, a website that hosted pornographic content, had played a "vital role" in the proliferation of child sexual abuse material ("CSAM") on its platform.  In reaching that determination, the court concluded that CSAM did not constitute "information" within the meaning of the CDA and therefore was not entitled to protection.  *See id.* at 1169–70.  That alone distinguishes *MG Freesites* from the facts of this case.  Still, Judge Coogler went on to find that the plaintiff had made an adequate showing of material contribution based on allegations that the defendants (1) actively controlled which videos were posted; (2) claimed to review every video posted to the platform; (3) flagged videos only if the performer appeared to be under the age of 12; (4) retitled videos where the title was suggestive of CSAM but left the videos available for viewing; (5) allowed slightly modified versions of banned CSAM-related terms to remain on the website; and (6) created and suggested tags indicative of CSAM-related content.  *Id.* at 1168.  Thus, Judge Coogler found that the defendants had not merely permitted third parties to upload CSAM to its platform but had "played a vital role in the creation and development of CSAM," including the material directly at issue in that action.  *Id.* at 1171.

As should be clear by now, the allegations at play in *MG Freesites* were much more favorable to the plaintiff than what's on display here.  At most, Plaintiff has alleged that Defendant added the "domestic violence" tag to Rain Drops' video, but none of the other types of allegations from *MG Freesites* are present here.  Indeed, the court in *Fenix Int'l* found the plaintiff's reliance on *MG Freesites* "absurd."  No. 22-CV-62176, 2025 WL 336741, at *8.  That is all the more true here given that Plaintiff has mustered allegations that are meager in comparison to the plaintiff's allegations in *Fenix Int'l*. Accordingly, the Court cannot say that Defendant "played a vital role in the creation and development," of the Rain Drops' video where it merely reposted a video with slight modifications to the caption and the addition of a tag that merely "augmented" the assertions already latent in the video itself.  *MG Freesites*, 676 F. Supp. 3d at 1171.

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** that the Motion **[ECF No. 17]** is **GRANTED**.   The Amended Complaint is **DISMISSED WITH PREJUDICE** as to Defendant Medialab.Ai Inc.

**DONE AND ORDERED** in the Southern District of Florida on May 11, 2026.

_____
DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:      counsel of record