UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:25-cv-62684-LEIBOWITZ

EVAN J. EIZENGA,

     *Plaintiff,*

v.

MEDIALAB.AI INC., *et al.,*

     *Defendants.*

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Derran Brown a/k/a JuniorRain's Motion to Dismiss Plaintiff's Corrected Amended Complaint ("the Motion") [ECF No. 19]. Plaintiff filed a response. [ECF No. 21]. Defendant did not file a reply within the time permitted under the Local Rules or otherwise move for an extension of time to do so. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

In this action Plaintiff Evan Eizenga ("Plaintiff" or "Eizenga"), a resident of Fort Lauderdale, Florida, alleges that an anonymous social media account and online "persona" known as Rain Drops Media ("Defendant" or "Rain Drops") reposted a defamatory video that had been "circulating widely" online, which falsely suggested that Eizenga was an abusive partner who had had battered Monroe Capri Bryant ("Bryant"), a young social media influencer with a sizable following. [ECF No. 13 ¶¶ 1, 7]. The video in question consists of a collage of other social media posts and clips from one of Bryant's live-streams featuring Plaintiff and Bryant together along with a caption that reads, "Woman was punched and assaulted by her boyfriend, she claims he still loves her and insists they're 'good' . . . ." [*Id.* ¶ 8]. One of Bryant's eyes is severely bruised, and Plaintiff can be seen attempting to kiss

Bryant on the temple.  [*Id.* ¶ 7].  The video has been viewed roughly four million times on the social media platform X.  [*Id.* ¶ 9, 46].

## LEGAL STANDARD

A court considering a motion to dismiss based on a lack of personal jurisdiction must engage in a two-part test.  *Kelly v. Kelly*, 911 F. Supp. 518, 520 (M.D. Fla. 1995).  First, a court must determine whether it has personal jurisdiction pursuant to Florida's Long-Arm Statute, Fla Stat. § 48.193, and second, a court must consider whether there are sufficient minimum contacts to satisfy the Due Process Clause of the Fourteenth Amendment such that the maintenance of a suit would not violate traditional notions of fair play and substantial justice.  *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant."  *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

## DISCUSSION

### I.    Personal Jurisdiction under Florida's Long-Arm Statute

Under Florida's long-arm statute, "[a] person . . . submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action" if, in relevant part, the person "[c]ommit[s] a tortious act within this state."  Fla. Stat. § 48.193(1)(a), (2).  "[A]lthough the posting of defamatory material about a Florida resident on a website alone [does] not constitute the commission of a tortious act under § 48.193(1)(b)," online activity satisfies Florida's long-arm statute where it is both "*accessible* in Florida and *accessed* in Florida."  *Internet Sols. Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) (citing *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1214 (Fla. 2010) (responding to certified question posed by Eleventh Circuit concerning application of Fla. Stat. § 48.193(1)(b) to electronic communications)) (emphasis in original).  Thus, "[a] party asserting jurisdiction in Florida

over a nonresident defendant for a defamation claim must make a prima facie showing that the purported defamatory statements were not merely accessible to, but also 'accessed by a third party in Florida.'" *Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018) (quoting *Internet Sols.*, 39 So. 3d at 1215).

Defendant first argues that Plaintiff has inadequately pled that the challenged video was accessible and accessed in Florida. [ECF No. 19 at 6]. As Defendant points out, Plaintiff does not "attach or identify concrete [evidence of] Florida-based access—such as comments by Florida users, reposts by Florida residents, or other specific indicators—tied to Defendant's posts." [*Id.* at 7]. For his part, Plaintiff alleges that Defendant:

> committed intentional tortious acts that were expressly aimed at and caused harm in Florida. The defamatory content was published on the internet targeting a Florida resident (Plaintiff), causing injury to his reputation in Florida. Defendants knew or should have known the brunt of the harm would be felt by Eizenga in Florida, and the exercise of jurisdiction in Florida comports with due process. . . . [T]he defamatory statements were accessed and circulated here, causing injury in [the Southern District of Florida].

[ECF No. 13 ¶¶ 5–6]. In his response, Plaintiff contends that the video "explicitly depicted a Fort Lauderdale resident and a Florida-based social media personality with [roughly 3.6 million followers]," meaning that the "content was . . . inherently likely to be accessed in Florida." [ECF No. 21 at 6]. As for direct evidence of third-party access, counsel for Plaintiff avers that lawyers in Florida viewed the video in advance of this action and that they have identified at least one unrelated user who reposted the video and whose X profile identifies the owner of the account as being located in Florida. [ECF No. 21 at 7 n.4; ECF No. 22 ¶¶ 8–9; ECF No. 22-1 at 1–2].

To start, the Eleventh Circuit and at least one district court have held that the *Internet Sols.* test is not satisfied where the only evidence of Florida-based access comes from parties involved in the litigation. *See Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018) (discounting declaration of attorney who "worked for the law firm representing [the plaintiff] in this suit when he

prepared and executed his affidavit"); *see also Mar. Exec., LLC v. Larson Elecs., LLC*, No. 17-CV-60323, 2018 WL 2938376, at \*4 (S.D. Fla. June 11, 2018) ("[T]he only person specifically identified as having accessed the alleged defamatory materials in Florida is [the plaintiff's] President, Tony Munoz, who does not constitute a third-party for purposes of defamation."); *but see Vasquez v. Maya Publ'g Grp., LLC*, No. 14-20791-CIV, 2015 WL 2170397, at \*3 (S.D. Fla. May 8, 2015) (finding it "clear that the material ha[d] been 'published' and 'communicated into' Florida" under *Internet Sols.* where the plaintiff had alleged that her "friends and family were able to access the materials in Florida"). Moreover, access must occur before the initiation of an action. *See Jackson-Bear Grp., Inc. v. Amirjazil*, No. 2:10-CV-332-FTM-29, 2011 WL 1232985, at \*6 (M.D. Fla. Mar. 30, 2011) (rejecting as insufficient evidence of access where it did not show "that [the] plaintiff, or any other Florida resident, accessed the website prior to the filing of the instant suit"). So, the fact that Plaintiff's counsel (or other parties involved in the litigation) viewed Defendant's post is insufficient to demonstrate access for purposes of the *Internet Sols.* test.

However, the Eleventh Circuit has found that the declaration of a single Florida resident who attests to having accessed online content in Florida is sufficient to satisfy *Internet Sols. See McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at \*3 (11th Cir. June 12, 2023). In line with *McCalls*, the Court finds Plaintiff's declaration sufficient to make out a "prima facie showing" that the post was published in Florida. *Catalyst Pharms.*, 748 F. App'x at 947. Of course, the declaration here rests on shakier ground than the declaration at issue in *McCall*. The former was prepared by Plaintiff's counsel rather than the third-party Floridian who accessed the material, and it relies on the self-reported information of an unidentified X user rather than sworn testimony regarding the third party's place of residence. That all said, the Court does not read *Interent Sols.* as placing a heavy burden on a plaintiff at this early stage of the litigation. *See* 39 So. 3d at 1216 (characterizing the "second step" of the personal jurisdiction analysis as the "more restrictive one"). Rather, a plaintiff need only make a prima facie

4

showing of publication. *Catalyst Pharms.*, 748 F. App'x at 947. That does not require a plaintiff to "nam[e] names." *Adam J. Rubinstein, M.D., P.A. v. Ourian*, No. 20-21948-CIV, 2020 WL 6591559, at *2 (S.D. Fla. Nov. 10, 2020). Accordingly, the Court finds that Plaintiff has made an adequate prima facie showing of accessibility and access under Florida's long-arm statute.

## II.  Specific Personal Jurisdiction[1] under the Due Process Clause of the Fourteenth Amendment

As for the second prong of the analysis, where a plaintiff asserts a claim for an intentional tort like the ones at issue here, courts typically apply the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). [2] *See Moore v. Cecil*, 109 F.4th 1352, 1362 (11th Cir. 2024). That test "requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Id.* (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009)).

The Eleventh Circuit recently clarified *Calder*'s application to "social media and internet-based activities" in *Moore v. Cecil*, 109 F.4th 1352, 1363 (11th Cir. 2024). That case concerned, in relevant part, four tweets posted by Guy Cecil, "a staunch Democrat and the chairman of Priorities U.S.A.," that referenced (but did not name) then-Alabama Senatorial candidate Roy Moore and his history of sexual misconduct. *See id.* at 1357. Moore brought a defamation action against Cecil, which the district court dismissed for lack of specific personal jurisdiction after finding that the tweets were not "aimed at Alabama." *Id.* at 1361. The Eleventh Circuit affirmed the dismissal. *Id.* at 1364–65.

---

[1]      Plaintiff has never contended that Defendant is subject to general jurisdiction in Florida. Accordingly, the Court considers only specific jurisdiction.

[2]      In *Moore*, the Eleventh Circuit acknowledged that "in cases involving intentional torts, courts may also apply the 'traditional minimum contacts test,' which involves a 'purposeful availment analysis.'" *Id.* at 1362 n.9 (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013)). The panel in *Moore* declined to explore that alternative test because the parties did not invoke it. *Id.* Because the parties here briefed only the *Calder* effects test, the Court pursues a similar route.

As explicated by the Eleventh Circuit in *Moore*, "the Supreme Court [has] clarified that a defendant's actions do not create sufficient contacts with the forum state 'simply because he allegedly directed his conduct at [a] plaintiff[] whom he knew had . . . connections' with the forum state." *Id.* at 1363 (quoting *Walden v. Fiore*, 571 U.S. 277, 289 (2014)) (first alteration added; other alterations in original). Drawing on the unanimous conclusions of its sister circuits, the Eleventh Circuit explained that "in determining whether the allegedly defamatory comments or information [were] directly aimed at the forum, the court must look to the defendant's focus, purpose, and/or intent in posting the information." *Id.* So, "where the out-of-state defendant deliberately directs his posting at the plaintiff or at an audience in the forum state, then the 'directly aimed at the forum' prong of the *Calder* effects test is satisfied." *Id.* at 1364. By contrast, "where there is no evidence that the defendant posted the allegedly defamatory information hoping to reach the forum state or an audience in the forum state specifically, then the *Calder* effects test is not satisfied." *Id.* In short, a plaintiff must show that the forum state—rather than one's "followers or a national audience generally"—constituted the "focal point" of the challenged conduct. *Id.*

*Moore* mandates dismissal of this action. To start, nothing in Plaintiff's Amended Complaint or briefing suggests that Defendant acted with the "focus, purpose, and/or intent" of targeting Florida. Indeed, Defendant did not even create the challenged content. Rather, the Amended Complaint merely alleges that Defendant reposted the allegedly defamatory video. [*See* ECF No. 13 ¶¶ 7–8]. A person who creates a piece of content—like the tweets in *Moore* or the article in *Calder*—must know something about that content in order to have produced it, including, most notably, the subject of the tweet or the article. That implicit knowledge permits a court to draw certain threshold inferences about the defendant's state of mind. By contrast, it is impossible, without more, to say that Defendant acted with any particular "focus, purpose, and/or intent" where he merely reposted—and

did not create—the content challenged in a defamation action. [3] A reposter may know a lot or, more often than not, virtually nothing at all about the content he reposts. Without more, it is impossible to say which camp Defendant falls into, and in that sense this case is a far cry even from *Moore*, which concerned an inveterate, sophisticated politico who knew who Moore was and explicitly referenced his connections to Alabama. *See Moore*, 109 F.4th at 1357; *see also Iqbal*, 556 U.S. at 678 (explaining that a complaint fails to state a claim where it alleges facts that are "'merely consistent with' a defendant's liability") (quoting *Twombly*, 550 U.S. at 557).

Critically, the only content that Defendant actually created here—the post's caption—says nothing particular about Plaintiff, Bryant, or Florida. Indeed, the caption does not even mention these individuals by name. Whereas the Eleventh Circuit requires more than "[m]ere knowledge that the effects of the defendant's conduct would be felt in the forum state," Plaintiff has not alleged that Defendant even knew who these individuals were when he reposted the challenged content, let alone where they resided or where the effects of the post would be felt. *Id.* at 1363–64.

Nor has Plaintiff put on any evidence suggesting that Florida was the "focal point" of Defendant's conduct. Nothing about his profile or the content he aggregates indicates that Defendant intends to target a particular geographic region. [*See* ECF No. 13 ¶ 3 n.1]. Instead, that account, with its more than 300,000 followers, appears to reach a nationwide, if not a global, audience. *Moore* makes clear that online posts directed at a national audience fail to satisfy the *Calder* effects test. *See Moore*, 109 F.4th at 1364–65.

---

[3] As explained in the Court's order granting Defendant Medialab.Ai Inc.'s motion to dismiss, Plaintiff's allegations that Defendants intentionally edited the video in order to craft a more salacious narrative are conclusory, shotgun-style allegations that are insufficient to state a claim. [ECF No. 27 at 7 n.3]. Moreover, even if Defendant Rain Drops did edit the video, Plaintiff's allegations are not sufficient to show that those changes were made with the "focus, purpose, and/or intent" of targeting the forum state. *Moore*, 109 F.4th at 1363.

Plaintiff's efforts to distinguish *Moore* are unavailing.  Plaintiff first contends that "Defendant's post [unlike the tweets in *Moore*] was specifically about identifiable individuals who are Florida residents and Florida-based public figures." [ECF No. 21 at 8].  But the tweets in *Moore* concerned an Alabama resident and an Alabama-based public figure—indeed, a public figure much more closely associated with the state than the individuals at issue here.[4]  Next, Plaintiff argues that "[t]he video depicted Plaintiff—a private person and Fort Lauderdale resident—and Monroe Capri Bryant, a Florida-based influencer with a substantial Florida following." [*Id.*].  But the plaintiff in *Moore* admitted that the tweets referenced (even if they did not depict) the candidate, who had a "substantial [Alabama] following." *Moore*, 104 F.4th at 1357.  Finally, Plaintiff argues that "[t]he subject matter of the post concerned events occurring in Florida, involving individuals whose lives, reputations, and social circles are centered in Florida." [*Id.*].  Still not enough, as Cecil's tweets concerned events occurring in Alabama (that is, Moore's alleged sexual misconduct) and involved an individual whose political career and life more generally were "centered in" Alabama.  In short, then, far from distinguishing *Moore*, Plaintiff's arguments emphasize the close parallels between these two cases.  To the extent the two cases diverge, the facts of the instant action are more favorable to Defendant than those in *Moore*.

To sum up, Plaintiff has not adequately alleged or otherwise shown that Defendant intentionally targeted Florida by merely reposting a viral clip that happened to include two Florida residents.  In fact, Plaintiff has not demonstrated that Defendant had any clue who these people were or that he acted with any "focus, purpose, and/or intent" whatsoever in reposting the video.  Without more, Plaintiff's efforts fall far short of the standard established by the Eleventh Circuit in *Moore v. Cecil.*

---

[4]     Moore was a long-time Alabama politician and was running to represent Alabama in the United States Senate.  By contrast, Plaintiff has not alleged that his career bears any relationship to Florida other than the fact that he resides here.

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** that the Motion **[ECF No. 19]** is **GRANTED**. The Amended Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff has leave to file a second amended complaint no later than June 1, 2026.

**DONE AND ORDERED** in the Southern District of Florida on May 11, 2026.

_____
DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:     counsel of record